J. S62017/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ADOPTION OF: B.G.R. A/K/A     :     IN THE SUPERIOR COURT OF
A.R., A MINOR     :     PENNSYLVANIA
          :
          :
          :
          :
          :
APPEAL OF: K.C.     : 
          :
          :     No. 563 MDA 2016

Appeal from the Order Entered March 3, 2016
In the Court of Common Pleas of Berks County
Orphans' Court at No(s): 84399

BEFORE: GANTMAN, P.J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY DUBOW, J.:           **FILED OCTOBER 19, 2016**

K.C. ("Father") appeals from the March 3, 2016 Order that terminated

Father's parental rights to infant A.R. ("Child") pursuant to 23 Pa.C.S. §§

2511(a) and (b) of the Adoption Act. After careful review, we affirm.

The orphans' court set forth the relevant factual history as follows:

> Father and Mother met in the summer of 2011 or 2012 when
> Mother was 11 or 12 years of age. Father was 19 or 20 at the
> time. They began dating several months later. In late 2014
> [23-year-old Father and 14-year-old-Mother] had sexual
> intercourse a "handful of times." Father believes the conception
> of Child occurred on December [], 2014. He was aware of
> Mother's pregnancy about one month after conception. Based
> upon his own calculations he estimated the Child's birth for
> August [], 2015. In July 2015, Mother's adult brother obtained a
> Protection From Abuse [("PFA")] Order against Father on behalf
> of Mother, which prohibited Father from having any contact with
> Mother. Despite the PFA [Order], Father and Mother text-
> messaged each other, and Mother telephoned Father. Father
> has had no direct contact with Mother since the entry of the PFA
> Order.

Father learned of Child's August [], 2015 birth from Mother's extended family – grandmother, aunt, and uncle – about two to three weeks after Child was born. During that conversation, he also learned that Mother was placing Child for adoption. Roughly one week later, on September 16, 2015, Father received a telephone call from A Baby Step Adoption, the adoption agency assisting Mother with Child's adoption plan. The call lasted a mere two to three minutes. Father did not ask about Child but did state that he wanted custody of her. Father called the agency back the same day and spoke to Barbara Casey, Esq. Again, it was a short conversation lasting perhaps one to three minutes.

Father had no further contact with the agency until on or about January 15, 2016 when he received notice of the termination hearing. He made no additional telephone calls to the agency, nor did he send any written correspondence regarding the Child or his rights. He sent no financial support, cards, presents, tokens of affection, or clothes for Child. Though acknowledging that he heard the Child's birth weight was eight pounds, nine ounces, Father gave the incredible excuse of not knowing the newborn child's size as the reason for failure to send clothes. He never requested any photographs of Child; however, he testified that he received some from Mother's aunt once or twice. Father resides seven blocks from the agency, but he never stopped in to demand that Child be returned to him or to ask about her welfare.

Father is a painter making $14 per hour. He takes home $300 to $1,000 per week. He lives with his mother. Despite this income and shared-living arrangement, Father claimed he did not have money to hire an attorney to obtain custody of Child, but he did have private counsel in his [PFA] matter only a month prior to Child's birth and again at the termination hearing. He testified that he needs his money for his criminal charges and transportation to go to work. Father did not ask for money from family although it appears family would have been willing to assist.

Father filed a *pro se* custody action in October 2015 that he says was denied pending the results of his criminal case. Apparently he filed no motion for reconsideration or notice of appeal and never served papers upon the agency or adoptive family.

At some point after the September 16, 2015 contact with the adoption agency, Mother informed Father about Child's birth and the adoptive family. Father looked up the family on the internet and learned information such as the adoptive [mother] being a teacher and the adoptive [father] being an engineer, but he claimed he did not attempt to find their address. He testified that he did not want to contact them and risk violating the PFA Order because of his belief that it covered [Child] as part of the whole household or family even though the PFA Order was entered prior to Child's birth. He also did not want the adoptive family to feel like he was attacking them since they were told that Child was the product of rape. When questioned, Father admitted that he could have written a letter and attempted to deliver it to the family through the agency.

Orphans' Court Opinion, filed 5/9/16, at 3-5 (footnote omitted).

In August 2015, three days after Child's birth, Mother executed a Consent to Adoption pursuant to 23 Pa.C.S. § 2711. On January 13, 2016, A Baby Step Adoption ("Adoption Agency") filed a Petition to Confirm Consent to Adoption and to Terminate Parental Rights. After a hearing, on March 3, 2016, the orphans' court terminated Father's parental rights and confirmed the consent of Mother.

Father filed a timely Notice of Appeal and accompanying Concise Statement of Errors pursuant to Pa.R.A.P 905(a)(2) and 1925(a)(2)(i). The orphans' court filed a 1925(a) Opinion.

Father raises the following issues on appeal:

1. The [orphans' court abused its discretion and] erroneously concluded that Father had not maintained contact with [Child] where Father had no access to [Child] or information as to [Child]'s whereabouts from birth and therefore had no way to reasonably have contact with [Child] as [Child] was immediately placed for adoption. Moreover, Father did take

> steps during the four month period to challenge the adoption and gain access to [Child].
>
> 2. The [orphans' court abused its discretion and] erroneously concluded that [Child] was conceived as a result of rape when there is no evidence that Father's sexual conduct constituted rape, and it is unclear as to what definition of rape applies for the purposes of 23 Pa.C.S.A. [§] 2511(a)(7).
>
> 3. The [orphans' court abused its discretion and] erroneously concluded that [Child] had no bond with Father when Father could never reasonably have had an opportunity to bond with [Child].

Father's Brief at 4-5.

Father first avers that the orphans' court abused its discretion in terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(6) when it determined that Father "failed for a period of four months preceding the petition, as re-filed, to make reasonable efforts to establish and maintain substantial and continuing contact with [Child.]" Order, filed 3/3/16. We disagree.

Our standard of review regarding orders terminating parental rights is abuse of discretion. *In re A.R.*, 125 A.3d 420, 422 (Pa. Super. 2015). Specifically, "[w]e must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." *Id.* (quotation and citation omitted).

In termination of parental rights cases, "the burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re*

*Adoption of W.J.R.*, 952 A.2d 680, 683 (Pa. Super. 2008). "Clear and convincing evidence" is defined as "testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (internal quotation marks and citation omitted).

Upon review, "[i]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of M.R.B.*, 25 A.3d 1247, 1251 (Pa. Super. 2011). Further, this Court must agree with the orphans' court decision as to only one subsection of 23 Pa.C.S. §2511(a) in order to affirm a termination of parental rights. *W.J.R., supra* at 684.

Section 2511(a)(6) provides that parental rights with respect to a newborn child may be terminated on the grounds that, "the parent knows or has reason to know of the child's birth, does not reside with the child, has not married the child's other parent, has failed for a period of four months immediately preceding the filing of the petition to make reasonable efforts to maintain substantial and continuing contact with the child and has failed during the same four-month period to provide substantial financial support for the child." 23 Pa.C.S. §2511(a)(6).

Here, Father concedes that he knew Child was born, that he does not live with Child, that he is not married to Child's Mother, and that he has failed to provide financial support for the child. Father's Brief at 11.

Father is "only disputing the fourth part of the requirements [–] that he failed to make reasonable efforts to maintain substantial and continuing contact." *Id.* Father argues that he spoke with the adoption agency, attempted to contact legal counsel, and filed a *pro se* custody action.[1] Father's Brief at 12. We do not find this to be a compelling argument.

This Court has stated "[a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008).

Moreover, "[i]t is incumbent upon a parent when separated from his child to maintain communication and association with the child. This requires an affirmative demonstration of parental devotion, imposing upon the parent the duty to exert himself, to take and maintain a place of importance in the child's life." *In re G.P.-R.*, 851 A.2d 967, 976 (Pa. Super. 2004).

The orphans' court opines:

> It is [] clear that Father has failed to make reasonable efforts to establish and maintain substantial and continuing contact with Child. Father learned the identity and some general information about the prospective adoptive parents who maintained actual

---

[1] While Father testified that he filed a custody action, he never provided any documentation at trial.

physical custody of Child yet made no effort to contact them by any means in order to inquire about Child or to ask for a visit. The Protection From Abuse Order did not preclude his contact with them or Child and Father's testimony that he believed in its preclusive effect was incredible and weak. Similarly he made no such inquiries with the adoption agency. Father acted as if he were more concerned about how his contact attempts might affect the prospective adoptive parents rather than his own rights, wants, and desires to be a parent and with no apparent regard for how his lack of contact with Child might affect Child. Additionally, he found it more important to devote his financial resources to things other than securing counsel to pursue any custody rights he might have had, and he failed to actively prosecute his *pro se* custody action upon receipt of the very first preliminary ruling in the matter. It is the Court's perception that Father has not been diligent in performing his parental duties or protecting his rights, choosing instead to wait for a more suitable circumstance.

\*\*\*

Father has never had any contact with Child, he never served as a parent to Child, and he will not be in a position to do either any time soon.

Orphans' Ct. Op. at 5-6 (footnotes omitted). A review of the record supports the orphans' court's findings. As such, we find no abuse of discretion. **See**

**A.R.**, **supra** at 422.

Father next avers that the orphans' court abused its discretion when it terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(7), concluding that Child was conceived as a result of Rape, when Father pled guilty to Statutory Sexual Assault. Father's Brief at 8, 14.

Because we have determined the orphans' court did not abuse its discretion in terminating Father's parental rights pursuant to 23 Pa.C.S.

§2511(a)(6), we need not consider this other basis for termination. **See W.J.R., supra** at 684.

Father's final claim of error is that the orphans' court "erroneously concluded that [Child] had no bond with Father when Father could never reasonably have had an opportunity to bond with the child." Father's Brief at 5. Father admits that there is no bond between Father and Child but argues that "when this short a time period is involved, it is extremely difficult to say that a child has a bond with anyone. In a situation such as this, the lack of bonding should be considered a neutral fact as opposed to a negative. Even if [Father] had had time with the minor child, there would have been minimal to no bond under the circumstances." Father's Brief at 17-18. Father's argument fails for the following reasons.

This Court has determined that under Section 2511, the lower court must engage in a bifurcated process prior to terminating parental rights. **In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007). The initial focus "is on the conduct of the parent" and whether there is clear and convincing evidence that the "parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." **Id.** (internal citations omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights then the court will engage "in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." **Id.** (citations

omitted). The "needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." *Id.* (citations omitted).

While Father argues that the orphans' court weighed the lack of bond between Father and Child "against" Father, the record reflects that the orphans' court independently determined that there were sufficient grounds to terminate Father's parental rights based on Section 2511(a)(6); the court then properly engaged in a separate bond analysis under Section 2511(b) to ensure that termination would be in Child's best interest and would not have a detrimental effect on Child. There was not a finding "against" Father. Accordingly, Father's argument has no merit.

Further, our review of the records supports the orphans' court's determination that the Adoption Agency met its burden under 23 Pa.C.S. §2511(b). Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

This Court has found that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.,* 884 A.2d 1284, 1287 (Pa. Super. 2005). In addition, the orphans' court "must also discern the nature and status of the

parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.*

This Court has determined that in cases where there is no evidence of contact between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

In the instant case, the orphans' court concluded from testimony that the "foster family has provided for every want and need of Child" and "[C]hild knows no other parental bond than that which she has with her foster parents." Trial Ct. Op. at 9. Further, the orphans' court found that there was no evidence of a bond between Father and Child, and that terminating Father's parental rights would not have a detrimental effect on Child. *Id.* at 9.

Our review of the record supports the orphan's court's conclusions that a termination of parental rights is in the best interest of Child and we find no abuse of discretion.

In sum, our review of the record supports the orphans' court's determination that the Agency met its burden of proving by clear and convincing evidence that Father's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(6) and 2511(b). Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2016